IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **ASHER BRONSTIN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**PALMETTO SOLAR, LLC**<br><br>*Defendant.* | Case No. 3:25-cv-00426-MOC-SCR |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO BIFURCATE DISCOVERY**

## Introduction

Plaintiff Asher Bronstin respectfully submits this memorandum in opposition to Defendant Palmetto Solar, LLC's Motion to Bifurcate Discovery (ECF No. 18-1). Palmetto asks the Court to impose an unusually rigid, three-phase discovery structure on the premise that Plaintiff's individual claim can be resolved in isolation, before the Court and the parties address the class allegations or the merits of the classwide conduct. But the facts alleged in the Complaint (ECF No. 1), together with the positions Palmetto takes in its Second Amended Answer and Third-Party Complaint (ECF No. 17), demonstrate that the liability issues central to Plaintiff's individual claim are inseparable from the issues that govern class certification and classwide proof. Palmetto's own pleadings admit as much.

Plaintiff alleges that he received a barrage of telemarketing calls and text messages promoting Palmetto's solar products, including calls made to a number on the National Do Not Call Registry, calls placed outside permitted calling hours, calls sent after a clear opt-out request, and calls transmitted with inaccurate caller identification information. Bifurcation under these

circumstances would not conserve resources. It would delay the case, force the parties to conduct overlapping discovery in sequential phases, and invite repeated disputes over whether particular information is "individual" or "class" discovery. The TCPA issues in this case are neither exotic nor unusually burdensome, and the Court can address any concerns about sensitive information through ordinary protective measures rather than through the extraordinary procedural device Palmetto seeks.

Because Palmetto has not carried its burden to depart from standard, efficient discovery practice, and because the factual and legal issues in this case necessarily intertwine, the Court should deny Palmetto's Motion to Bifurcate Discovery.

## Background

This case arises from a straightforward pattern of unlawful telemarketing activity in violation of the Telephone Consumer Protection Act ("TCPA"). The Complaint alleges that Plaintiff Asher Bronstin received a sustained sequence of unwanted calls and text messages promoting Palmetto Solar's products, despite having registered his telephone number on the National Do Not Call Registry over a year beforehand. According to the Complaint, beginning on June 3, 2024, Plaintiff received six telemarketing calls and more than fourteen promotional text messages from individuals identifying themselves as calling on behalf of Palmetto Solar, including after Plaintiff sent a clear "STOP" request to opt out of future communications. Several of these messages were sent outside the permitted calling hours, including one at 5:05 a.m. (ECF No. 1 ¶¶ 29–41).

Plaintiff further alleges that many of the calls displayed inaccurate or generic caller name (CNAM) information, despite the availability of accurate CNAM transmission through the carriers used to place the calls. The Complaint identifies multiple telephone numbers, their CNAM results,

2

the carriers responsible for transmitting those results, and the Palmetto representatives or agents associated with those communications (ECF No. 1 ¶¶ 25–31). Plaintiff has never been a Palmetto customer, has never consented to receive telemarketing, and uses his number exclusively for personal residential purposes (ECF No. 1 ¶¶ 17–24).

In its Second Amended Answer, Palmetto denies virtually every factual allegation and asserts more than fifty affirmative defenses, including that Plaintiff lacks standing, that Palmetto never contacted him, that Plaintiff or someone acting on his behalf consented, that any calls fell within exceptions, and that third parties are at fault (ECF No. 17 at 3–20). Numerous defenses are mutually inconsistent—for example, Palmetto simultaneously argues that it did not make any calls, that the calls were made with consent, that Plaintiff was not harmed, that Plaintiff is not a residential subscriber, that calls occurred only within lawful time periods, and that any violations were unintentional. These defenses alone underscore the need for discovery into Palmetto's relationships with its marketers and its calling practices.

Critically, Palmetto's Third-Party Complaint directly contradicts its denials. It alleges that if the calls and texts occurred, then Ambient Power LLC, Wendell Laidley, and Tom Cameron are responsible for transmitting them. Palmetto alleges that these third-party marketers entered into contracts requiring them to solicit leads for Palmetto, use best efforts to market its clean energy products, comply with the TCPA, and indemnify Palmetto for any unlawful communications (ECF No. 17 at 21–30). Palmetto further alleges that these individuals and entities were responsible for the "means, methods, techniques, procedures, safety precautions, and security systems" used for customer outreach—including compliance with federal law.

Despite pleading that its own marketing partners were responsible for the very communications at issue, Palmetto now seeks to bifurcate discovery into separate phases covering

(1) Plaintiff's individual claim, (2) class certification, and (3) class merits (ECF No. 18-1). Palmetto argues that bifurcation is warranted because it has "no record whatsoever" of Plaintiff in its system. That assertion is wholly untested, contradicts the factual specificity of Plaintiff's allegations, and is at odds with Palmetto's own Third-Party Complaint, which assigns responsibility for the calls to entities outside Palmetto's internal systems.

The overlap between Plaintiff's individual claim and classwide issues is substantial. The same discovery is required to determine who made the calls, how leads were generated, what scripts and calling procedures were used, the degree of Palmetto's control over its marketers, the accuracy of its CNAM settings, its TCPA compliance practices, and whether the practices directed at Plaintiff reflect Palmetto's broader marketing operation. Attempting to artificially sever this discovery will delay the case, duplicate effort, and introduce unnecessary disputes over what falls into each phase.

**Standard**

Federal Rule of Civil Procedure 26 affords district courts "broad discretion" in managing the timing and sequencing of discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *see also* Local Rule 16.3(a)(3)(B) (providing for courts' ability to "sequence discovery into two or more stages"). While the court enjoys broad discretion to bifurcate discovery, "bifurcation of discovery is the exception, rather than rule, and it is clear that in most instances, regular—that is, unbifurcated—discovery is more efficient." *Cent. Transp. Int'l, Inc. v. Gen. Electric Co.*, No. 3:08CV136-C, 2008 U.S. Dist. LEXIS 103456, 2008 WL 4457707, at *3 (W.D.N.C. Sept. 30, 2008); *see Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.*, 403 F.Supp.2d 451, 461 (D. Md. 2005) (bifurcation of discovery "would not further judicial economy"); *see also Wilson v. Quest Diagnostics, Inc.*, 2019 U.S. Dist.

LEXIS 224798, 2019 WL 7560932, at *4 (D.N.J. Aug. 22, 2019) (highlighting potential unfairness and inefficiency of bifurcation in TCPA case).

**Argument**

**I.      Bifurcation of Discovery Would be Inefficient and Prejudicial**

Bifurcation of discovery is often "counterproductive." Manual For Complex Litigation (Fourth) ("MCL 4th") § 21.15 (2015). That is readily apparent here, especially because the Defendant seeks *three* phases of trifurcated discovery. To begin, the proposed bifurcation guarantees that the parties will need to duplicate their work. First, the parties would undertake "individual claim" discovery and all that entails: written discovery requests, depositions, and then expert disclosures and expert depositions, all limited just to the individual claim of the Plaintiff. Then, Defendant would file a dispositive motion to Plaintiff's individual claims. And then, should the Court deny that motion, the parties have to start all over again, serving discovery requests and taking depositions of the same witnesses a second time, but this time focusing on class certification issues only. And after that, there would be a second round of dispositive motions on the class issues. And then again, there would be more discovery requests and taking depositions of the same witnesses, for a *third* time related to merits issues for the class.

All told, this means at least three rounds of written discovery, three rounds of depositions (with the same witnesses being deposed three times), and then two rounds of summary judgment briefing. This is the opposite of judicial economy. Indeed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co*, No. 3:cv-14-0282, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. Sept. 15, 2014).

The Court should deny Defendant's motion to bifurcate for this reason alone. *See id.* (denying similar motion to bifurcate merits and class discovery in a TCPA case); *EQT Prod. Co. v. Terra Servs., LLC*, No. 14-1053, 2014 U.S. Dist. LEXIS 203680, *4 (W.D. Pa. Oct. 21, 2014) ("Terra's proposal would likely result in deposing the same witnesses twice—once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation in this case.").

Apart from the duplication of discovery outlined above, Defendant's proposal is bound to lead to additional discovery disputes and proceedings that would be completely unnecessary without bifurcation. There is significant overlap between discovery relevant to the merits of Plaintiff's individual claims and issues of class certification. Indeed, "[class certification] analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal citations and quotations omitted); *Lakeland Reg'l Med. Ctr. v. Astellas US, LLC*, No. 8:10-cv-2008, 2011 U.S. Dist. LEXIS 16684, *4 (M.D. Fla. 2011) ("[T]he line between 'class issues' and 'merits issues' is practically difficult, if not impossible, to determine."); Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'").

As another Court ruled when denying a motion to bifurcate in a TCPA case:

> The Court has reviewed the parties' joint status report. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to

> the merits of the claim. Moreover, the Supreme Court in *Walmart v Dukes* has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*Katz v. Allied First Bank, SB*, No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023). Other courts have agreed. *See, e.g.*, *Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025) (relying on several TCPA cases in rejecting a bifurcation of discovery holding, "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at *6 (W.D. Wash. Oct. 11, 2023); *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst.").

As another federal court held earlier this year while rejecting bifurcated discovery in yet another TCPA case, "Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes and place greater demands on the Court's time. This result also implicates the third factor, judicial economy, and weighs against bifurcation." *Nock v. PalmCo Admin., LLC*, No. 24-CV-00662-RDB, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025). Indeed, as another Court in Texas held on March 19, 2025 while rejecting a substantially similar bifurcation request from a TCPA defendant highlighting the signification overlap between merits and class certification discovery in a TCPA case while providing an overview of relevant case law:

> As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).

Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23." *Cardenas*, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393, at *3.

Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is — as Bond persuasively argues — necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class discovery claims typically overlap).

And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what

8

discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").

And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025). This Court should hold the same.

Palmetto's own pleadings highlight the difficulty in bifurcating discovery. In its Third-Party Complaint (ECF No. 17), Palmetto affirmatively alleges that Ambient Power LLC, Wendell Laidley, and Tom Cameron—not Palmetto itself—were responsible for initiating the calls and text messages at issue. Palmetto claims that these third-party marketers solicited business on Palmetto's behalf, controlled the means and manner of outreach, were solely responsible for the conduct of their callers, were contractually obligated to comply with all applicable laws including the TCPA, and must indemnify Palmetto for any resulting liability. These are sweeping allegations of agency, delegated authority, and operational control that necessarily broaden the factual landscape of the case. By putting these third parties at the center of its defense, Palmetto has made discovery into their conduct indispensable at the outset.

These allegations demonstrate why bifurcation cannot work here. Determining whether Ambient, Laidley, and Cameron acted as Palmetto's agents, whether they were authorized to place calls on Palmetto's behalf, whether Palmetto controlled or ratified their conduct, and whether they engaged in uniform marketing practices is not a question unique to Plaintiff. These issues lie at the heart of class certification and classwide liability. They concern the structure and oversight of Palmetto's entire marketing apparatus—how leads were generated, what scripts were used, how calls were routed, what compliance systems existed, and whether Palmetto monitored or enforced

TCPA obligations. These systemic questions cannot be deferred to a later "class" phase because they are equally relevant to Plaintiff's individual claim and to every putative class member's claim. Palmetto cannot simultaneously shift liability to external marketing partners while insisting that discovery into those same partners must be stayed until after an individualized merits mini-trial. Courts routinely reject bifurcation where a defendant raises agency-based defenses or third-party responsibility because such issues are inherently classwide and require holistic discovery. Here, Palmetto has created the very entanglement of facts it now seeks to avoid. Its attempt to compartmentalize discovery contradicts its own litigation posture and would leave Plaintiff unable to test the factual assertions Palmetto has chosen to put at issue. The contradiction underscores why discovery must proceed in the ordinary, unified manner.

The delay from segmented discovery periods would in fact prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. *See, e.g.*, *Saleh v. Crunch, Ltd. Liab. Co.*, No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764, at *4-5 (S.D. Fla. Feb. 28, 2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"). The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *See, e.g.*, *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was

not available); *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for the substantially the same reason). As such, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See, e.g.*, *Cooley v. Freedom Forever LLC et. al.*, No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). Plaintiff will also be prejudiced by a stay because, "with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Sanaah v. Howell*, 2009 No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009).

By contrast, Defendant will not be prejudiced if Plaintiff is permitted to proceed with discovery in the ordinary course. As another federal court explained in denying a motion to stay discovery in a TCPA case:

> In addition, [defendant] has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. [plaintiff], on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
>
> \* \* \*
>
> In the meantime, it is clear that critical evidence, including records from any third parties that [defendant] may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019).

The Defendant has not carried its burden to justify an artificial limitation (never mind two) on discovery. The Federal Rules provide ample protections to Defendant for any requests that are expensive, burdensome or simply dipropionate to what is needed to advance this case.

**Conclusion**

Palmetto's request for bifurcation cannot be squared with its own litigation posture. Palmetto denies making any of the calls or texts at issue, yet simultaneously alleges that its third-party marketers made them. It claims to have "no record whatsoever" of Plaintiff, yet alleges detailed contractual relationships governing telemarketing, compliance, and indemnity. It asserts Plaintiff lacks standing, while asserting affirmative defenses that presuppose calls occurred, that consent existed, that opt-outs were honored, and that calling procedures were compliant. These are not minor inconsistencies; they reflect a deliberate strategy to avoid producing discovery while advancing contradictory factual narratives.

These contradictions underscore the central point: only full, integrated discovery will allow the parties—and the Court—to evaluate Palmetto's claims, its defenses, and the role of its marketing partners. Segmented discovery would not clarify these issues; it would conceal them, delay their resolution, and require multiple rounds of overlapping depositions and document productions. Courts routinely reject bifurcation where a defendant injects agency issues, third-party responsibility, or system-wide marketing practices into the case. Palmetto has done all three.

Because Palmetto has not carried its burden to justify deviating from ordinary discovery practice—and because bifurcation would prejudice Plaintiff, prolong the proceedings, and obscure rather than illuminate the factual issues in dispute—the Court should deny Palmetto Solar's Motion to Bifurcate Discovery.

RESPECTFULLY SUBMITTED AND DATED this 22nd day of November, 2025.

*/s/ Ryan P. Duffy*
Ryan P. Duffy
The Law Office of Ruan P. Duffy PLLC
1213 W. Morehead St.
Suite 500, Unit #450
Charlotte, NC 28208
704-741-9399
Email: ryan@ryanpduffy.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
*Notice of Special Appearance*